```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: __3/6/2023__
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**THOMAS P. ALLEN,**

                      **Plaintiff,**

-against-

**CITIGROUP GLOBAL MARKET HOLDINGS, INC.,**

                      **Defendant.**

---

**21-cv-2387 (ALC)**

**OPINION AND ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

    Plaintiff Thomas P. Allen ("Mr. Allen" or "Plaintiff"), brings this suit against Defendant Citigroup Global Market Holdings Inc. ("CGMHI" or "Defendant"), headquartered in New York, alleging fraud under New York state law and filing of a false registration pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k. Plaintiff is proceeding *pro se*. On June 9, 2021, Defendant moved to dismiss this action pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. This Court denied the Defendant's motion in its July 19, 2022 Order. ECF No. 23. Defendant now moves for dismissal pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). For the reasons discussed below, the Defendant's motion is **GRANTED.**

BACKGROUND

    **I.    Procedural Background**

    In the Court's order denying Defendant's motion to dismiss pursuant to Rule 12(b)(1), the Court directed the parties to submit a proposed expedited briefing schedule for a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6).[1] ECF No. 23. Defendant filed a letter with a proposed briefing schedule and explained it had reached out to Mr. Allen seeking his consent but

---

[1] The Court established a two-track briefing schedule in this action whereby the parties were directed to first brief the issue of subject matter jurisdiction. ECF No. 14.

that he did not respond. ECF No. 24. Defendant filed its motion and supporting papers on August 2, 2022. *See* ECF Nos. 26-28. Plaintiff's opposition was due on August 16, 2022. After failing to file its opposition, the Court issued an order to show cause as to why Defendant's motion should not be deemed as unopposed. ECF No. 30. The Court directed Plaintiff to file a written response on or before August 26, 2022. To date, Plaintiff has not filed an opposition to Defendant's motion. Thus, the motion is deemed unopposed and fully briefed.

## II.     Factual Background

The facts summarized herein are taken from Plaintiff's Complaint, Compl., ECF No. 1, as well as the statements that Plaintiff has attached as exhibits to the Complaint, *see id*., Exs. A, B, C.[2] Plaintiff purchased, in the secondary market, exchange traded notes issued by Defendant. Compl. ¶ 4, *id*., Ex. C, ECF No. 1-3.  The notes Plaintiffs purchased were denominated "Velocity Shares 3x Long Crude Oil ETNs" (the "ETNs"). On April 3, 2020, 1,500 ETNs—that were acquired on "various" unspecified dates—were redeemed; these appear to the ETNs upon which Plaintiff's alleged damage are predicated.[3]

---

[2] Although the Court generally should not look outside of the pleadings to decide a motion to dismiss a complaint, the Court may consider "any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit" of which a court may take judicial notice. *Sgalambo v. McKenzie*, 739 F.Supp.2d 453, 470 (S.D.N.Y. 2010) (quoting *ATSI Commc'ns Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). Plaintiff references the Pricing Supplement filed by Defendant in his complaint; therefore, it is incorporated into the complaint by reference. *See* Compl. ¶ 2.

[3] The Complaint does not allege when Plaintiff purchased the ETNs upon which he sustained investment losses, nor does it attach brokerage statements showing his ETN transactions. The Complaint appends Plaintiff's 2022 IRS Form 1099-B (Proceeds from Broker and Barter Exchange Transactions) which indicates that Plaintiff purchased a total of 2,600 UWT ETNs over unspecified periods of time. *See* Compl. ¶ 4; Compl., Ex. C, ECF No. 1-3. The 1099-B Form further indicates that Plaintiff bought and sold 300 ETNs on January 6, 2020 and sold an additional 700 ETNs,

The ETNs were linked to the S&P GSCI Crude Oil Index ER (the "Index"), which tracks futures contracts for crude oil. Compl. ¶ 3; *see also* Rubin Decl., Ex. A, (the "Pricing Supplement"), ECF Nos. 28-1-6. The ETNs were unsecured debt obligations that were intended to be daily trading tools for sophisticated investors. Pricing Supplement at 2. They reflected a leveraged long or leveraged inverse exposure to the performance of the Index on a daily basis. *See Id*. at 3. Unlike debt securities that provide interest and a guaranteed return of principal, the ETNs offered investors the right "to receive a cash payment at maturity, upon early redemption or upon acceleration, as applicable, . . . linked to the performance of the Index." *Id*.

Defendant published the Pricing Supplement, dated March 18, 2020, in which it discloses the risks of investing in the ETNs. The Pricing Supplement explains that:

> The ETNs are riskier than securities that have intermediate- or long-term investment objectives, and may not be suitable for investors who plan to hold them for a period other than one day. Any decision to hold the ETNs for more than one day should be made with great care and only as the result of a series of daily (or more frequent) investment decisions to remain invested in the ETNs for the next one-day period. Accordingly, the ETNs should be purchased only by knowledgeable investors who understand the potential consequences of an investment linked to the Index and of seeking daily compounding leveraged long . . . investment results . . . .

*Id*. at 1. The Pricing Supplement also disclosed risk factors related to the volatility of crude oil markets that could impact the trading prices and redemption values of the ETNs. For example, the Pricing Supplement explained that the ETNs "could experience greater volatility" than other investments because the Index tracks a single commodity – crude oil. *Id*. at 46; Memo. of Law in Supp. of Def's Mot. to Dismiss ("MTD"), ECF No. 27 at 4-5. Furthermore, the Pricing Supplement

---

purchased on unspecified dates, in a series of transactions from January 7-9, 2020. *Id*. It also shows that an additional 1,500 ETNs (acquired on "various" unspecified dates) were redeemed on April 3, 2020 and appear to be the ETNs upon which Plaintiff's alleged damages are predicated. *Id*.

explained that the trading price of the ETNs is determined based on trading in the secondary market, not based on the so-called "indicative value" of the ETNs. Pricing Supplement at 16; MTD at 3-5; *see generally Steadman v. Citigroup Glob. Markets Holdings Inc.*, 592 F. Supp. 3d 230, 235 (S.D.N.Y. 2022); *Thomas v. Citigroup Glob. Markets Holdings Inc.*, No. 21cv3673 (VEC) (DF), 2022 WL 1051158, at *4-*5, 15 (S.D.N.Y. Mar. 1, 2022), *report and recommendation adopted as modified*, No. 21-CV-3673 (VEC), 2022 WL 951112 (S.D.N.Y. Mar. 30, 2022).

The Pricing Supplement also explains that CGMHI has the right to accelerate the ETNs at its "option at any time," and that the ETNs will be automatically accelerated if the Index declines to a certain level. Pricing Supplement at 36. Upon optional acceleration, investors are entitled to "receive a cash payment per ETN in an amount . . . equal to the Closing Indicative Value of such series of ETNs on the final Valuation Date of the Optional Acceleration Valuation Period." *Id*. at 61. The Pricing Supplement explains that "the return on the ETNs will not be based entirely on Index fluctuations during this period" and that investors would "not entirely benefit from any favorable movements in the level of the Index during this period as the Index Exposure declines." *Id*. at 36.

On March 19, 2020, when "the price of oil was at a historic low," CGMHI announced the optional acceleration of the ETNs. Compl. ¶ 3; Rubin Decl., Ex. B (the "Press Release"). The Press Release states that the Optional Acceleration Valuation Period would begin on March 25, 2020 and was expected to end on March 31, 2020, and that investors would be paid on April 3, 2020. Press Release. On April 3, 2020, Plaintiff's 1500 ETNs were redeemed. Compl., Ex. C. Plaintiff does not allege in the Complaint when he purchased these ETNs. Based on the redemption value of the ETNs on April 3, 2020, Plaintiff allegedly incurred a loss of $14,751.30. Compl. ¶ 4.

Plaintiff brings claims under Section 11 of the Securities Act of 1933 and New York common law fraud. Plaintiff seeks $147,513.00 in damages comprised of $14,751.30 in compensatory damages and $132,761.70 in punitive damages. Compl. ¶¶ 4, 8. Plaintiff concludes that an "acute blatant fraud" occurred because on March 19, 2020 the Index increased by 24.39% and trading prices of the ETNs should have increased by 73.17% (3x the Index increase) but only increased by 23%. *Id*. ¶¶ 3, 4. Plaintiff further asserts that, to keep secondary market trading prices in line with values approximating 3x the Index, CGMHI "used a simple computer program . . . to ensure that if the price of [the ETNs] deviated from the price it should have been to follow the index, the computer would automatically buy or sell enough [ETNs] to bring the price to where it should be so that the index was followed correctly." *Id*. ¶ 5. Plaintiff also alleges that "a human that had access to the defendant's software must have chosen to change it . . . and this change was made on March 19, 2020" when the ETN trading prices "grossly under-tracked the index" by "over 50 percentage points, causing a nearly 80% loss for . . . stockholders." *Id*. ¶ ¶ 3, 5.

## LEGAL STANDARD

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). However, the Court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Claims should be dismissed when a plaintiff has not pleaded enough facts that "plausibly give rise to an entitlement for relief." *Id.* at 679. A claim is plausible "when the plaintiff pleads factual content that allows the Court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). While not akin to a "probability requirement," the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). Accordingly, where a plaintiff alleges facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).

As to Plaintiff's *pro se* status, it is "well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citation omitted); *see Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (holding that a *pro se* party's pleadings must be liberally construed in his favor and are held to a less stringent standard than the pleadings drafted by lawyers). "*Pro se* litigants must nonetheless abide by the same rules that apply to all other litigants." *Farmer v. United States*, No. 15-cv-6287, 2017 WL 3448014, at *2 (S.D.N.Y. Aug. 10, 2017) (citations and quotation marks omitted).

Section 11 of the Securities Act of 1933 provides a private right of action to investors of a security if "any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact." 15 U.S.C. § 77k(a). "To prevail on a Section 11 claim, a plaintiff must show that the relevant communication either misstated or omitted a material fact." *Fait v. Regions Financial Corp.*, 655 F.3d 105, 109 (2d Cir. 2011)

6

(internal quotation marks and citation omitted). Under § 11, "a misrepresentation of fact is material if 'an investor would attach importance to it in making an investment decision.'" *Ho v. Duoyuan Glob. Water, Inc.*, 887 F. Supp. 2d 547, 562 (S.D.N.Y. 2012) (quoting *In re APAC Teleservice, Inc. Sec. Litig.*, 1999 WL 1052004, at *9 (S.D.N.Y. Nov. 19, 1999)). A plaintiff alleging a claim sounding in fraud must also meet the heightened particularity pleading standard of Fed. R. Civ. P. 9(b). Rule 9(b) "requires that the plaintiff (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Fin. Guar. Ins. Co. v. Putnam Advisory Co.*, 783 F.3d 395, 403 (2d Cir. 2015). *see also Ho*, 887 F. Supp. 2d at 562.

## DISCUSSION

### I.  Section 11 Claim

Defendant argues that Plaintiff's Section 11 claim should be dismissed because the Complaint fails to (a) identify any untrue statement of material fact that is contained in a registration statement at the time it became effective; or (b) trace Plaintiff's purchases to a specific registered offering. MTD at 8. The Court finds that the Complaint fails to state a claim under Section 11 of the 1933 Securities Act.

The Complaint alleges that CGHMI "advertised" the ETNs to track the Index and that this alleged advertisement was false because the trading prices for the ETNs did not track the Index on March 19, 2020. Compl. ¶ 3. However, there "cannot be a material misstatement or omission if defendants' statements explicitly disclosed the very risks about which plaintiff claims to have been misled." *Steadman*, 592 F. Supp. 3d at 237 (citing *Y-GAR Cap. LLC v. Credit Suisse Grp. AG*, No. 19 Civ. 2827 (AT), 2020 WL 71163, at *4 (S.D.N.Y. Jan. 2, 2020)).

Here, the Pricing Supplement warns investors of the particular and heightened risks associated with investing in the ETNs. Neither CGMHI nor the title of the ETNs make any statement that the value of the ETNs will faithfully track three times the Index on a daily basis. Moreover, the Pricing Supplement expressly warns that trading prices for the ETNs were determined by the market—not CGMHI—and could "vary significantly" from the Indicative Value for the ETNs based on the Index. Pricing Supplement at 18. The Pricing Supplement further states that the trading prices for the ETNs could be influenced "by many unpredictable factors" beyond CGMHI's control like global supply and demand for crude oil and economic events affecting the commodities markets. *Id*. at 38. "The Pricing Supplement thus forecloses the notion that the "3x" included in the ETNs' name is a representation that the ETN on a daily basis will rise or fall three times the extent to which the Index rises or falls[—r]ather the daily value of the ETN is determined in the market." *Steadman*, 592 F. Supp. 3d at 247; *see* also Pricing Supplement at 18; *Thomas*, 2022 WL 1051158, at *15. Therefore, Plaintiff has failed to state a claim under Section 11.[4]

Additionally, under Section 11, "it is not sufficient that, at some point after the registration statement became effective, some subsequent event made it no longer accurate." *Jiajia Luo v. Sogou, Inc.*, 465 F. Supp.3d 393, 406 (S.D.N.Y. 2020). Here, Plaintiff's Complaint fails to allege that the

---

[4] Several Courts in this District, including this one, have dismissed, or recommended dismissal of, similar or identical claims concerning the same ETNs brought by other *pro se* plaintiffs for failure to state claim under Section 11 of the Securities Act. *See generally Steadman v. Citigroup Glob. Markets Holdings Inc.,* 592 F. Supp. 3d 230, 235 (S.D.N.Y. 2022); *Ravi v. Citigroup Glob. Markets Holdings Inc.*, No. 21CV2223GHWJW, 2022 WL 2532162, at *3 (S.D.N.Y. June 1, 2022), *report and recommendation adopted*, No. 1:21-CV-2223-GHW, 2022 WL 3910599 (S.D.N.Y. Aug. 31, 2022); *Thomas v. Citigroup Glob. Markets Holdings Inc.*, No. 21cv3673 (VEC) (DF), 2022 WL 1051158, at *4-*5, 15 (S.D.N.Y. Mar. 1, 2022), *report and recommendation adopted as modified*, No. 21-CV-3673 (VEC), 2022 WL 951112 (S.D.N.Y. Mar. 30, 2022); *Jacobson v. Citigroup Glob. Markets Holdings Inc.*, No. 21-cv-02834-ALC (S.D.N.Y. Feb. 13, 2023).

statements identified were untrue at the time the registration statement became effective. Instead, Plaintiff alleges that that the Pricing Supplement "became untrue." Compl. ¶¶ 2, 5. A statement that becomes untrue, is by definition not one that was untrue at the time it was made. For this reason too, the Section 11 claim must be dismissed. *See In re Hexo Corp. Securities Litigation*, 524 F.Supp.3d 283, 300 (S.D.N.Y. 2021) (dismissing Section 11 claim "based on hindsight pleading").

## II.    Common Law Fraud Claim

The Court declines to exercise jurisdiction over the Plaintiff's claim for common law fraud under New York state law. *See* 28 U.S.C. § 1367(c)(3) (providing that the district court "may decline to exercise supplemental jurisdiction" once the court "has dismissed all claims over which it has original jurisdiction").

The Court has already found that there is no basis for an exercise of diversity jurisdiction over Plaintiff's common law fraud claim.[5] The Court's July 19, 2022 Order incorporated its decisions from two cases which involved similar facts and claims as the instant action—*Jacobson v. Citigroup Glob. Mkt. Holdings Inc.*, No. 21-cv-2384 (ALC), 2022 WL 268792, (S.D.N.Y. Jan. 28, 2022) and *Zellner v. Citigroup Glob. Mkt. Holdings Inc.*, No. 21-CV-2413 (ALC), 2022 WL 126002 (S.D.N.Y. Jan. 13, 2022). In both cases, the Court found there was no basis for an exercise of diversity jurisdiction over those plaintiffs' common law fraud claims.[6]

---

[5] *See* ECF No. 23.
[6] *See Jacobson v. Citigroup Glob. Mkt. Holdings Inc.*, No. 21-cv-2384 (ALC), 2022 WL 268792, at *1 (S.D.N.Y. Jan. 28, 2022) ("Plaintiff may not invoke this Court's subject-matter jurisdiction under 28 U.S.C. 1332(a)"); *Zellner v. Citigroup Glob. Mkt. Holdings Inc.*, No. 21-CV-2413 (ALC), 2022 WL 126002, at *2 (S.D.N.Y. Jan. 13, 2022) (same).

Because the Court dismisses Plaintiff's federal claim and the Court has already found that there is no basis for an exercise of diversity jurisdiction over Plaintiff's common law fraud claim, the Court declines to exercise supplemental jurisdiction over Plaintiff's common law fraud claim. *See Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well.").

## CONCLUSION

The Defendant's motion is **GRANTED**. The Clerk of the Court is respectfully directed to terminate ECF No. 26. Any motion for leave to file an amended complaint will be submitted by **March 20, 2023**.

**SO ORDERED.**

Dated:   **March 6, 2023**
              **New York, New York**

                                          **ANDREW L. CARTER, JR.**
                                          **United States District Judge**